James G. McCLOSKEY, Appellant,

v.

STATE OF MARYLAND, Appellee.

No. 9100.

United States Court of Appeals
Fourth Circuit.

Argued April 14, 1964.

Decided Sept. 17, 1964.

Benjamin Lipsitz, Baltimore, Md. (Court-assigned counsel), for appellant.

Robert F. Sweeney, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and BUTZNER, District Judge.

HAYNSWORTH, Circuit Judge.

McCloskey, held as a defective delinquent[1] in Maryland's Patuxent Institution, seeks a court order requiring officials of the Institution to permit him to engage in an extensive correspondence, one broader than any possible judicially enforceable right he may have. He does not question, in this proceeding, the legality of his detention. Under the circumstances, we conclude that dismissal of the petition without a hearing was warranted.

McCloskey declares in his petition that he is anti-Semitic, and he alleges that he is held in punitive segregation at Patuxent because of his expression of his anti-Semitic beliefs. He wishes to correspond on the subject with members of Maryland's Legislature representing Cecil County, the United States Representative who represents the District of which Cecil County is a part, the two United States Senators from Maryland, the American Civil Liberties Union and the American Bar Association. He asks for an order which would require the Patuxent officials to permit him to write to each of those prospective correspondents, expressing his anti-Semitic opinions and beliefs, registering complaints which he thinks legitimate and seeking legal assistance of them.[2]

In this Court, we appointed an able and responsible attorney to represent McCloskey. Ironically, it develops that the attorney is Jewish.[3] With high fidelity

1. See Art. 31B, § 5 et seq., Annotated Code of Maryland (1957 ed.).

2. The legal assistance he seeks apparently is in aid of an end to his alleged separation from the general body of the inmates

of the Institution and an unrestricted right to expound his opinions to other inmates.

3. Informed of this fact, McCloskey expressed the wish that the attorney proceed with his representation of him.

to his duty as an officer of the court, the attorney has urgently and ably presented McCloskey's contentions that he has an absolute right, even in the circumstances of his confinement, to express his beliefs to his prospective correspondents and to request their aid. As was said of Voltaire, the attorney, who must strongly disagree with McCloskey's anti-Semitic opinions, rushes to the defense of McCloskey's right to hold and express them.

Imprisoned felons and inmates of such institutions as Patuxent cannot enjoy many of the liberties, the rights and the privileges of free men. They cannot go abroad or mount the housetops to speak. They are subjected to rigid physical limitations and to disciplinary controls which would find no shred of justification in any other context. Even the disciplinary powers of military authorities are not so absolute.

 Because prison officials must be responsible for the security of the prison and the safety of its population, they must have a wide discretion in promulgating rules to govern the prison population and in imposing disciplinary sanctions for their violation. If a tractable inmate is subjected to cruel and unusual punishment or if his exercise of a constitutional right is denied without semblance of justification arising out of the necessity to preserve order and discipline within the prison, he may have a right of judicial review.[4] In the great mass of instances, however, the necessity for effective disciplinary controls is so impelling that judicial review of them is highly impractical and wholly unwarranted.[5] The remedy of the inmate is through administrative review, which ought to be available always.

██ While an inmate of such an institution should be allowed a reasonable and proper correspondence with members of his immediate family and, at times,

with others, it is subject to censorship to be certain of its reasonableness and propriety. A broader correspondence is subject to substantial limitations or to absolute prohibitions. Control of the mail to and from inmates is an essential adjunct of prison administration and the maintenance of order within the prison.[6] A propagandist has no judicially enforceable right to propagandize within the prison walls, whether his propaganda be directed to other inmates or to outsiders.

██ McCloskey's efforts to express his anti-Semitic beliefs in correspondence is clearly subject to the administrative controls of prison officials. Indeed, this case would present no question to occasion a moment's pause were it not for his claim that he seeks legal assistance of his prospective correspondents.

It does not appear, however, that McCloskey had been denied legal assistance. He has filed a number of petitions and, in prosecuting some of them, it affirmatively appears that he enjoyed the effective assistance of able counsel supplied by the court. In no instance is it charged that he ineffectually sought counsel or that his access to the courts has been subjected to any restraint.

Moreover, the thrust of McCloskey's petition is in aid of a judicial requirement that prison officials allow him to engage in his propagandizing effort. The legal assistance he seeks is only incidental to his propagandizing and in aid of it. Of course, prison officials should not interfere with his access to the courts, or with a reasonable correspondence designed to secure for himself legal assistance for the purpose of testing the validity of his conviction or the constitutionality of punitive treatment which he may claim to be cruel and unreasonable. An effort to correspond in reasonable terms with a limited number of national organizations and public officials in aid of such objec-

---

4. Sewell v. Pegelow, 4 Cir., 291 F.2d 196; Roberts v. Pegelow, 4 Cir., 313 F.2d 548; Childs v. Pegelow, 4 Cir., 321 F.2d 487.

5. Williams v. Steele, 8 Cir., 194 F.2d 32.

6. Ortega v. Ragen, 7 Cir., 216 F.2d 561; United States ex rel. Thompson v. Fay, D.C., S.D.N.Y., 197 F.Supp. 855; United States ex rel. Cobb v. Maroney, D.C., W.D.Penn., 216 F.Supp. 910.

tives, even in the light of the fact that throughout McCloskey has had the effective assistance of very able counsel, would produce a different question. We only hold that he has no constitutional right to seek legal assistance in aid of propagandizing endeavors, in which he has no right to engage so long as he is confined except to the extent that they may be administratively permitted. Since he has no judicially enforceable right from the walls of the institution to bombard prospective correspondents with propaganda, he has no incidental right to seek their legal assistance in aid of that objective.

The petition was properly dismissed without a hearing.

Affirmed.