**Thurlow BELK, Plaintiff,**

v.

**Captain T. S. MITCHELL, Mr. V. Lee Bounds and the North Carolina Department of Corrections, Defendants.**

**Civ. A. No. 2341.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Dec. 12, 1968.

No appearance for plaintiff.

Thomas Wade Bruton, Atty. Gen., and Andrew A. Vanore, Jr., Staff Atty., North Carolina Dept. of Justice, Raleigh, N. C., for defendants.

## MEMORANDUM OF DECISION AND JUDGMENT

McMILLAN, District Judge.

Thurlow Belk is a prisoner in Central Prison in Raleigh, serving a term of four to eight years upon conviction of common law assault and robbery from the person. State v. Belk, 269 N.C. 725, 153 S.E.2d 494 (1967). The conviction is not challenged by this proceeding. On March 4, 1968 he was placed in solitary confinement by prison authorities for reasons which he does not challenge. On April 3, 1968, upon release from solitary confinement, he verified the complaint, which is entitled "Petition for Writ of Habeas Corpus & Motion for Writ of Mandamus, Informa Pauperis."

Plaintiff alleges that his civil rights were violated by T. S. Mitchell, Captain of the Department of Corrections, acting under the color of state authority, in that: (a) He was kept in solitary confinement on limited diet for thirty days; (b) His request to be allowed to attend Sunday religious services was denied in that he was not taken out of segregation for that purpose and no minister was brought to him in his segregation cell; (c) A letter to Mr. V. Lee Bounds, Superintendent of the North Carolina Department of Corrections, was opened and read by Captain Mitchell and returned to the prisoner; and (d) His thirty-day confinement was intentionally extended one meal longer than thirty days.

Based upon these allegations the plaintiff requests a mandamus ("a writ of mandamus for a permanent injunction") restraining the defendants Bounds and the Department of Corrections from continuing Captain Mitchell in their employment.

The defendants countered with a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. They attached to the motion an affidavit by the defendant Mitchell denying that Belk ever requested a visit by a minister, and also a copy of eighteen pages of the prison regulations. Captain Mitchell's affidavit also says that the period of actual segregation was from March 4 to April 2, 1968, or twenty-nine days rather than thirty.

Even without considering the affidavit of Mitchell, it appeared doubtful that this court had jurisdiction or ought to grant the relief requested. The plaintiff wrote on August 16, 1968 and on September 9, 1968 requesting the Court to pass upon the motion without a hearing and in his absence. However, in order to get a better impression of the merits of the allegations, the Court requested that the prisoner be produced for a hearing, and heard argument from both parties. The plaintiff appeared and made a most eloquent and articulate presentation of his own case. No circumstances in the form of oppression or dis-crimination or mistreatment were suggested by him other than the facts alleged in the complaint. He did upon interrogation say that the letter which had been opened was not denied access to the mail and that its contents were not

changed and that it was allowed to go into the mails after it had been returned to him.

The case may therefore be viewed as one which raises the ghost but not the substance of possible constitutional violations.

■ Some latitude must be allowed prison authorities in the maintenance of discipline. Price v. Johnston, 334 U.S. 266, at 285, 286, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir., 1963); McCloskey v. State of Maryland, 337 F.2d 72 (4th Cir., 1964); United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir., 1964), cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277 (1965).

If, as the State contends and the Court finds, the days of solitary confinement were actually twenty-nine, the prisoner's complaint on that score would seem to be totally unfounded. If, as he contends, the period was thirty days plus one meal, the subject would still appear to be a matter within the discretion of the prison authorities even if they be allowed only the very slightest tolerance for error.

■ The control of the mail is necessary to proper prison administration. The plaintiff admits that the mail did go through and it does not appear that censorship of the mail, whether addressed to the head of the Department of Corrections or to others, is a deprivation of any constitutional guaranty available to a prisoner in solitary confinement. Ortega v. Ragen, 216 F.2d 561 (7th Cir., 1954); McCloskey v. State of Maryland, 337 F.2d 72 (4th Cir., 1964); Schack v. Wainwright, 391 F.2d 608 (5th Cir., 1968), cert. denied, 392 U.S. 915, 88 S.Ct. 2078, 20 L.Ed.2d 1375 (1968).

■ As to the alleged deprivation of religious worship, the parties agree that plaintiff was not allowed to join other prisoners in the regular Sunday morning services while he was in solitary confinement. There is no allegation that he asked for a minister to be sent to his cell, and the defendant's affidavit says and the Court finds that no such request

was made. If the solitary confinement itself is justifiable, then it would seem entirely reasonable to allow some discretion to the prison authorities whether to allow or not allow the Sunday morning commingling of solitary prisoners with the others. Prison authorities of course have no right to restrict the prisoner's freedom of religious beliefs and convictions. However, absent a showing of prolonged and unjustifiable discrimination, his "public" exercise of his religious beliefs and his access to publicly provided chaplains during temporary punitive solitary confinement would seem to be matters within the reasonable discretion of the prison authorities. Cooper v. Pate, 382 F.2d 518 (7th Cir., 1967); Wright v. McMann, 257 F.Supp. 739 (N.D.N.Y., 1966); Note, Provision of Religious Facility for Prisoners, 12 A.L.R.3d 1276; Sharp v. Sigler, 277 F.Supp. 963 (D. Nebraska, 1967); Evans v. Ciccone, 377 F.2d 4 (8th Cir., 1967).

■ It is the opinion of this Court that not only are the violations as alleged sufficiently minor that they should not invite intervention by a federal court under 42 U.S.C. § 1983, but also that there were in fact no constitutional violations either alleged or shown.

■■ Finally, it appears that the only remedy sought is a mandamus to require the discharge of Captain Mitchell. Mandamus is a remedy not available in a federal court except as ancillary to other relief or in aid of jurisdiction already acquired. Craig v. Calif., 376 F.2d 583 (7th Cir., 1967); In Re: Wolenski, 324 F.2d 309 (3rd Cir., 1963). Jurisdiction to issue a mandamus is lacking.

## CONCLUSION

The entire file, including the pleadings, affidavits, exhibits and facts stated at the hearing, was considered by the Court in arriving at its conclusions. All statements of fact in this opinion are findings of fact for purposes of the decision. The allegations as to violations of plaintiff's constitutional rights do not state a claim or claims upon which relief can be granted, and no showing of such

violation has been made. The Court has no jurisdiction to issue a mandamus, the sole remedy requested.

The motion of the defendants to dismiss is allowed.