**Charles SMITH, Plaintiff,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, et al., Defendants.**

**Civ. A. No. 1495.**

United States District Court,
W. D. Missouri,
Central Division.

March 25,. 1971.

As Amended April 26, 1971.

Charles Smith, plaintiff, pro se.

Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

JUDGMENT OF DISMISSAL

WILLIAM H. BECKER, Chief Judge.

In his complaint herein under the Federal Civil Rights Act, plaintiff, a state convict confined in the Missouri State Penitentiary, stated that he had

been placed in the "C-Basement maximum security unit" because certain members of the general prison population have made and are making threats against his life; that, by such confinement, plaintiff "is now being treated the same as intractable prisoners who are being punished in C-Basement maximum security unit for violating the rules and regulations of the penitentiary"; that plaintiff's yard privileges and entertainment opportunities had been curtailed; that plaintiff was being deprived of educational opportunities; that he was being deprived of the opportunity to earn "merit time" by donating blood, by working and by other means; that he cannot purchase articles from the commissary; that he is subject to poorer living conditions than other prisoners; that he is denied the right to go to church; and that the C-Basement unit is negligently maintained by defendants in that the window is painted so that it does not let in light.

On December 12, 1969, defendants' motion to dismiss was denied because plaintiff's allegations, viewed in the light most favorable to him under the rule of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Great Atlantic & Pacific Tea Co. v. Amalgamated Meat Cutters & Butcher Workmen of North America (C.A.8) 410 F.2d 650; and Leimer v. State Mut. Life Assur. Co. (C.A.8) 108 F.2d 302, may have stated a claim under the Federal Civil Rights Act.

Under the rule of Ivey v. Frost (C.A. 8) 346 F.2d 115, this Court issued its order on August 24, 1970, directing defendants to show cause why the leave originally granted plaintiff to proceed in forma pauperis should not continue. Defendants' response was filed, together with exhibits, on September 2, 1970. The substance of the averments in that response is as follows:

"As can be seen [by] reference to Respondent's Exhibit 'A', plaintiff in the instant case has a history of requesting assignment to the Maximum Security Detention Facility of the Missouri State Penitentiary, of being returned to the general population and reassigned job classifications, and on the return to general population being unable to socialize with other inmates and exhibiting a proclivity to arm himself with knives, has been returned to Maximum Security. Exhibit 'A' demonstrates that since the filing of the instant complaint on August 11, 1969, plaintiff has been released to general population and reclassified to job assignments in the furniture factory, and returned to Maximum Security for the posession (sic) of a homemade knife and the stabbing of a fellow inmate. By reference to Exhibit 'B', it can be seen that plaintiff was, for his own safety, maintained in the Maximum Security Detention Facility to avoid possible harm to his person. As can be seen further from Exhibit 'B', the detention period was for two weeks only. With reference to Exhibit 'C', plaintiff in the instant case had the option to notify the classification committee at the exact time he felt he could be returned to general population. By reference to Exhibit 'D' it can be seen that because of threats on plaintiff's life, the plaintiff acquiesced in his return to Maximum Security. By reference to Exhibit 'E', it can be seen that on review of his Maximum Security Status, plaintiff informed the classification committee that he felt that his return to general population would be dangerous, and that if returned to general population he would have to arm himself in order to protect himself. Exhibits 'F', 'G', and 'H', demonstrate the hesitancy plaintiff exhibited in his being able to make a peaceful return to the general population. As can be seen from the Chronological Data Sheet, that on the 29th of September, 1969, the plaintiff was returned to general population reassigned, and reclassified, and assigned a job in the furniture factory. The Data Sheet then shows a 5-month pe-

riod in which plaintiff was in general population.

"By reference to Exhibits 'I', 'K' and 'L', the action the classification committee took in Exhibit 'M', can be seen to be the fact of stabbing by plaintiff of another inmate.

"In the light of the foregoing facts, it would appear that at no time has plaintiff in the instant case been arbitrarily, or capriciously, assigned to the Maximum Security Detention Facility of the Missouri State Penitentiary, it would appear that plaintiff has had eight different reviews by the classification committee of his status, that he has been returned three times to general population, only to be returned on his inability to socialize in general population, to Maximum Security."

If the statements of the response were uncontradicted by plaintiff, none of plaintiff's federal rights had been violated. Therefore, plaintiff was granted an opportunity to reply to the factual averments of the response. Plaintiff was expressly invited to file a traverse to the response by an order of this Court. The traverse was filed on September 10, 1970. Pertinently, it stated that plaintiff denied any averments that he is unable to socialize in the general prison population and that he had requested maximum security assignment although he admitted that the classification committee had informed him that they had information which indicated plaintiff "would have a great deal of trouble if he was released to the general prison population" and that "he was placed in the C-Basement Maximum Security Unit * * * because someone (unknown to plaintiff) threw a knife and towel with several holes stabbed in it, into plaintiff's cell and plaintiff reported the incident to a prison guard and turned the knife and towel over to the guard."

Contrary to the order directing the filing of the traverse, however, plaintiff's statement of September 10, 1970, was not under oath. Plaintiff submitted a more complete statement on September 24, 1970, which was under oath and notarized, and which read as follows:

"1. With reference to the defendants' Exhibit 'A' filed in this cause, plaintiff denies that he has a history of requesting assignment to the C-Basement Maximum Security Unit of the Missouri State Penitentiary; denies that he requested (at any time) to be placed in the C-Basement Maximum Security Unit of the Missouri State Penitentiary; denies that he is unable to socialize with other inmates; denies that he has armed himself with knives in the general population; admits that he was released from the C-Basement Maximum Security Unit on October 1, 1969; admits that someone threw a knife into his cell on the evening of May 16, 1968, and he reported the incident to a prison guard and as a result he was returned to the C-Basement Maximum Security Unit on May 17, 1968;

"2. With reference to the defendants' Exhibit 'B' filed in this cause, plaintiff admits that upon being received at the Missouri State Penitentiary at Jefferson City, Missouri on March 8, 1968, he was placed in the C-Basement Maximum Security Unit; denies that he was placed in the C-Basement Maximum Security Unit for his own safety; admits that he appeared before the Classification Committee on April 18, 1968; admits that he asked to be released from the C-Basement Maximum Security Unit; admits that he was released from the C-Basement Maximum Security Unit on May 1, 1968; admits that he was called to the prison control center on May 8, 1968 and returned to the C-Basement Maximum Security Unit for investigation because of inmate talk in the general population, and was released to the general population on May 15, 1968.

"3. With reference to the defendants' Exhibit 'C' filed in this cause, plaintiff admits that he appeared before the Classification Committee on May 22, 1968; denies that he indicated he had reached a point where he felt it necessary that he be placed in the C-Basement Maxi-

mum Security Unit; denies that he was placed in the C-Basement Maximum Security Unit at his own request; admits that someone threw a knife into his cell on the evening of May 16, 1968, and he reported the incident to a prison guard; denies that he stated he had the knife to use just in case someone attacked him; denies that he claimed he had received numerous threats that his life might be in danger if he continued in the general population; denies that he had the option to notify the Classification Committee at the exact time he wanted to be released to the general population.

"4. With reference to the defendants' Exhibit 'D' filed in this cause, plaintiff admits that he appeared before the Classification Committee on December 10, 1968; admits that he asked to be released from the C-Basement Maximum Security Unit, and further admits that he was called before the Classification Committee on the following day which was December 11, 1968 at which time the Classification Committee informed plaintiff that they were reassigning him to the C-Basement Maximum Security Unit, and further told plaintiff that they had information from various sources indicating that he would have a great deal of trouble if he was released to the general population; denies that he informed the Classification Committee that he had also heard this information on the evening of December 10, 1968; denies that he stated to the Classification Committee that it was quite possible that he would have trouble of a serious nature if released to the general population; denies that he acquiesced in his return to the C-Basement Maximum Security Unit.

"5. With reference to the defendants' Exhibit 'E' filed in this cause, plaintiff admits that he appeared before the Classification Committee on January 14, 1969; admits that he asked to be released from the C-Basement Maximum Security Unit; denies that he informed the Classification Committee that he was positive that he would have serious trouble with other inmates if he was re-turned to the general population or to Intermediate Maximum Security; denies that he informed the Classification Committee that he felt that his return to general population would be dangerous, and that if returned to general population he would have to arm himself; denies that he likened his situation to being on a battlefield; denies that he stated he certainly was not going to go about without arming himself if he was returned to general population.

"6. With reference to the defendants' Exhibit 'F' filed in this cause, plaintiff admits that he appeared before the Classification Committee on February 18, 1969; denies that he exhibited any hesitancy in being able to make a peaceful return to the general population.

"7. With reference to the defendants' Exhibit 'G' filed in this cause, plaintiff admits that he appeared before the Classification Committee on May 20, 1969; admits that he asked to be released from the C-Basement Maximum Security Unit; denies that he stated he was sure he would have serious trouble if released to the general population; denies that he stated he would definitely be stabbed if he went to the general population.

"8. With reference to the defendants' Exhibit 'H' filed in this cause, plaintiff admits that he appeared before the Classification Committee on August 19, 1969; admits that he asked to be released to the general population; denies that he was evasive as to whether or not he would have trouble; admits that he stated to the Classification Committee that he was being punished through no fault of his own.

"9. With reference to the defendants' Exhibits 'A', 'I', 'J', 'K', 'L' and 'M', filed in this cause, plaintiff objects to either admitting or denying anything in said exhibits concerning or connected with the alleged stabbing of inmate Charles Pritchett, Register No. 14539, for the reason that plaintiff is accused and charged with assaulting the said Charles Pritchett, and plaintiff's trial on said charge is presently pending in the Circuit Court of Cole County, Missouri.

Plaintiff further objects to either admitting or denying anything in said exhibits for the reason that there is not anything in the said exhibits that is in any way related to or connected with plaintiff being held in the C-Basement Maximum Security Unit, during the years of 1968 and 1969.

"By reference to plaintiff's Exhibit 'A', it can be seen that plaintiff was not held in the C-Basement Maximum Security Unit on his own request. By further reference to plaintiff's Exhibit 'A', it can be seen that he complained to the defendants to no avail, about being held in the C-Basement Maximum Security Unit and being punished in the C-Basement Maximum Security Unit and being deprived of his privileges, and the defendants continued to arbitrarily and capriciously punish plaintiff in the C-Basement Maximum Security Unit and deprive him of his privileges, while under the pretense of protecting him from other inmates. By reference to plaintiff's Exhibit 'B', it can be seen that the Classification Committee told plaintiff that they had information from various sources indicating that he would have a great deal of trouble if he was released to the general population. If the defendants did have information from various sources as they claimed, then they should have punished the person or persons who were threatening to harm plaintiff instead of punishing plaintiff. By further reference to plaintiff's Exhibit 'B', it can be seen that plaintiff did not request to be placed in the C-Basement Maximum Security Unit. By further reference to plaintiff's Exhibit 'B', it can be seen that the Classification Committee told plaintiff that he was being assigned to the C-Basement Maximum Security Unit as a protective measure, which shows that plaintiff was not held in the C-Basement Maximum Security Unit of the Missouri State Penitentiary for violating the rules and regulations of the penitentiary, and further shows that plaintiff did not acquiesce in his return to the C-Basement Maximum Security Unit but was returned to the C-Basement Maximum Security Unit because he had no choice except to obey the orders of the defendants.

"Plaintiff submits that the records in this case show that he repeatedly asked to be released from the C-Basement Maximum Security Unit. The records further show that he was not held in the C-Basement Maximum Security Unit for violating the rules and regulations of the penitentiary.

"Plaintiff submits that the defendants have arbitrarily and capriciously assigned him to the C-Basement Maximum Security Unit of the Missouri State Penitentiary and subjected plaintiff to the deprivation of his equal rights, privileges and immunities, which are secured and protected by the federal Constitution and laws of the United States, and as a direct and proximate result of the negligence and carelessness of the defendants in the maintenance of the C-Basement Maximum Security Unit and the windows thereof in a dangerous and unsafe painted condition, plaintiff was caused to suffer damages to his eyes which caused his vision to become blurred and impaired, and was subjected to the deprivation of his equal rights, privileges and immunities, which are secured and protected by the federal Constitution and laws of the United States. In violation of Amendment 14 to the United States Constitution."

In neither of his traverses does plaintiff deny that someone threw a knife into his cell on May 16, 1968; that the prison administration was possessed of information that plaintiff would be in jeopardy in the general prison population; and that he was the subject of a pending felony charge in the Circuit Court of Cole County. Any of those undenied facts might conceivably provide substantial evidence justifying plaintiff's commitment to maximum security quarters. Plaintiff's averment under oath that he is currently charged in the Circuit Court of Cole County with the stabbing of another inmate warrants his continued confinement in maximum security in accordance with a valid prison

regulation. The records submitted by defendants show that plaintiff's maximum security status has been reviewed by the classification committee on April 18, 1968, May 22, 1968, December 11, 1968, January 14, 1969, February 18, 1969, May 20, 1969, and August 19, 1969, and that he was, from December 10, 1968, to December 11, 1968, and from September 30, 1969, to March 31, 1970, released from maximum security confinement to the general prison population. Although plaintiff denies requesting maximum security confinement for his own protection in the reviews extending from April 1968 to September 1969, his admission of the threats to his safety is sufficient, in combination with his conviction of a stabbing, to warrant his confinement for that period of time. His further admission of the pendency of criminal charges against him in state court justifies his confinement in maximum security from March 31, 1970, to date. Plaintiff has not been arbitrarily or capriciously committed to maximum security. Therefore, he has not been denied any federal rights and cannot state a claim under the Federal Civil Rights Act. Courtney v. Bishop (C.A.8) 409 F.2d 1185; Jackson v. Bishop (C.A.8) 404 F.2d 571; Nolan v. Scafati (C.A.1) 430 F.2d 548. It is well settled that lawful imprisonment justifiably diminishes many of the civil rights formerly enjoyed by a convict. Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356. The care, custody, discipline, control and treatment of a state prisoner is within the lawful discretion of the Warden of the State Penitentiary, and the exercise of that discretion is not judicially reviewable absent exceptional circumstances or the denial of a federal right. Douglas v. Sigler (C.A.8) 386 F.2d 684; Burns v. Swenson (C.A.8) 430 F.2d 771. No exceptional circumstances or denial of a federal right is stated by plaintiff in this case. No other basis of federal jurisdiction is stated by or inferable from the complaint. Viewing the complaint in the light most favorable to plaintiff in accordance with the rule of Conley v.

Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, it must be dismissed for failure to state a claim within federal jurisdiction. All of the other deprivations stated by plaintiff are the usual incidents of maximum security confinement and have been necessary for his past protection. Accordingly, they neither amount to cruel and unusual punishment or denials of equal protection of the laws. It is therefore

Adjudged that this cause be, and it is hereby, dismissed for failure to state the denial of any federal right.