Nathan **BREEDEN**, Appellant,

v.

Hunter P. **JACKSON**, Appellee.

No. 71–1400.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1972.

Decided March 21, 1972.

Rehearing En Banc Denied May 11, 1972.

---

Harvey E. Bines, Charlottesville, Va., Court-appointed counsel, for appellant.

William P. Robinson, Jr., Asst. Atty. Gen. (Andrew P. Miller, Atty. Gen. of Virginia, on brief), for appellee.

Before CRAVEN and RUSSELL, Circuit Judges, and CHAPMAN, District Judge.

RUSSELL, Circuit Judge:

 Petitioner was a Virginia State prisoner. Claiming threats of bodily harm, he was transferred at his own request from the general prison population to maximum security.[1] Since his transfer was by his own request, and since the prison authorities found no verification of the threat, petitioner was free to leave maximum security. He, however, chose to remain but filed in the District Court his petition for "Peremptory Writ of Mandamus"[2] complaining that the deprivations imposed on him in maximum security represented cruel and unusual punishment inhibited by the Eighth Amendment and claiming damages on account of such deprivations. With a single exception, the deprivations were the usual incidents of confinement in maximum security. There were no claims of mental abuse or corporal punishment. See Holt v. Sarver (D.C.Ark.1969) 300 F.Supp. 825, 828, affirmed and remanded for further proceedings, (8th Cir.) 442 F.2d 304. He makes no allegations "of physical injuries suffered while in disciplinary confinement" as in Haines v. Kerner (1971)

---

1. See Smith v. Swenson (D.C.Mo.1971) 333 F.Supp. 1258, 1260–1261:

 "Maximum security confinement 'is permissible where its object is protection of the general prison population or the personnel, protection of the prisoner himself, for disobedience of orders or for prevention of his escape.'"

2. Petitioner described his proceeding as one for a writ of mandamus. On this appeal, his counsel states his action as one under Section 1983, 42 U.S.C. See, Rivers v. Royster (4th Cir. 1966) 360 F.2d 592, 594.

404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652. Petitioner was not denied heat or forced to sleep nude on a concrete floor, as in Wright v. McMann (2d Cir. 1967) 387 F.2d 519, 521, and Hancock v. Avery (D.C.Tenn.1969) 301 F.Supp. 786, 789. His complaints, save for the one to be specially noted, related to limited recreational or exercise opportunities, the prison menu and restricted shaving and bathing privileges. The sole unusual claim in his petition is that, while confined in maximum security at his own request and not for disciplinary reasons, he suffered a denial of any opportunity for parole. This contention, however, is contrary to the undisputed record and may be disregarded. The State filed an affidavit establishing that prisoners confined at their own request in maximum security were not prejudiced in the consideration of their parole applications; and, to clinch this statement, it emphasized the petitioner has been released on parole. The District Court concluded on the basis of the undisputed record itself that the regulations of the prison's administration, challenged by the petitioner, covering persons voluntarily confined in maximum security, were not arbitrary or unreasonable and dismissed the petition.

We affirm.

It is arguable that petitioner's claims for relief—certainly all not covered by his prayer for damages—are moot. He is no longer in maximum security or subject to any of the deprivations that attach to such confinement and of which he complains. Burns v. Swenson (8th

Cir. 1970) 430 F.2d 771, 776; Kostal v. Tinsley (10th Cir. 1964) 337 F.2d 845, 847, cert. den. 380 U.S. 985, 85 S.Ct. 1354, 14 L.Ed.2d 277. We would not, however, rest our conclusions on this point. The dismissal of the petition was clearly appropriate on the admitted facts as set forth in the petitioner's own complaint, and as established by the defendant's showing.

■■■ While modern authority has considerably broadened prisoner's rights,[3] prison discipline remains still largely within the discretion of the prison authorities and federal courts will interfere only where paramount federal constitutional or statutory rights intervene.[4] It may be that the prison authorities in this case could have arranged to provide the petitioner with less onerous conditions of confinement. Under the guise of protecting constitutional rights, however, federal courts do not have the power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management.[5] So long as the rules of prison management are "not so unreasonable as to be characterized as vindictive, cruel or inhuman," [6] so long as they "are necessary or reasonable concomitants of imprisonment",[7] so long as the regulations do not involve punishment or restraints "intolerable in fundamental fairness," [8] so long as the rules are not

3. Coffin v. Reichard (6th Cir. 1944) 143 F.2d 443, 445, 155 A.L.R. 143, cert. den. 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001; Sewell v. Pegelow (4th Cir. 1961) 291 F.2d 196, 198; 9 W. & M. L. Rev. 178 (1967).

4. Roberts v. Pegelow (4th Cir. 1963) 313 F.2d 548, 551. The reason is plain: " * * * the necessity for effective disciplinary controls is so impelling that judicial review of them is highly impractical and wholly unwarranted." McCloskey v. State of Maryland (4th Cir. 1964) 337 F.2d 72, 74.

5. Cf., Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 874, 31 L.Ed.2d 36, decided February 23, 1972, "But the Constitution does not provide judicial remedies for every social and economic ill."

6. Roberts v. Pegelow, *supra*, 313 F.2d at p. 550.

7. Edwards v. Duncan (4th Cir. 1966) 355 F.2d 993, 994.

8. Carey v. Settle (8th Cir.) 351 F.2d 483, at p. 485.

exercised "in such a manner to constitute clear arbitrariness or caprice",[9] no constitutional rights are infringed.

The deprivations of which the petitioner complains here do not assume constitutional dimensions; they are neither arbitrary nor capricious. Under petitioner's own claim, they are the usual and accepted regulations imposed in maximum security. They "neither amount to cruel and unusual punishment or denials of equal protection of the laws."[10] They are manifestly within the discretionary authority of the prison administration. They involved none of the inhuman deprivations noted in Hancock v. Avery, *supra*. These regulations are similar to those complained of in Ford v. Board of Managers of New Jersey State Prison (3d Cir. 1969) 407 F.2d 937, 940, where the Court said:

"Solitary confinement in and of itself does not violate Eighth Amendment prohibitions, and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief."

See, also, to the same effect: Krist v. Smith (5th Cir. 1971) 439 F.2d 146,[11] affirming (D.C.) 309 F.Supp. 497; Graham v. Willingham, *supra*; Kostal v. Tinsley, *supra*; Smith v. Swenson, supra. Applying the language of the Court in the last-cited case to this case, "Viewing the complaint in the light most favorable to plaintiff in accordance with the rule of Conley v. Gibson, 355

U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, it must be dismissed for failure to state a claim within federal jurisdiction." (333 F.Supp. p. 1258.)

The judgment of the District Court is affirmed.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

Nine-tenths of Breeden's complaints have been undercut but not mooted, as the majority seems to concede, by his release from maximum security and parole from the system. I am not much interested in his prayer for damages—because it would seem unfair to allow a substantial damage award to stand against individual prison administrators who until now have had no warning that deprivation of a prisoner's normal privileges is not a perfectly proper way to protect him from the violence of other inmates.

But the possibility that parole can be revoked and his entitlement to nominal damages leaves us with a live case. Breeden may have to go back to the State Farm. He can die there.[1] I think the time has come to enunciate clearly to prison administrators that it is their responsibility to protect life and that they may not condition such protection on relinquishment of earned prison privileges. It seems important to my brothers that Breeden asked for maximum security confinement knowing of its attendant loss of privileges.[2] Since the alternative

---

9. Graham v. Willingham (10th Cir. 1967) 384 F.2d 367, 368; Brooks v. Wainwright (5th Cir. 1970) 428 F.2d 652, 653.

10. Smith v. Swenson, 333 F.Supp. 1253, at p. 1258.

11. The prisoner's complaint in this case dealt with "the prison menu; censorship of his mail; lack of medical care; the infrequency of shower facilities; lack of exercise; and lack of access to legal materials, library, and religious services." (439 F.2d p. 147)

1. Knifing Fatal To Convict, 21
 A prisoner at the State Farm in Powhatan County was stabbed to death as he and other inmates were returning to their cells after supper last night.

Z. V. Saunders, a state police investigator identified the prisoner as Julius V. Nettles, 21, who was serving time from Portsmouth on a statutory burglary conviction.

Saunders said the victim was stabbed in the chest.

He was carried to St. Mary's Hospital, where he was pronounced dead.

Saunders said no arrests had been made last night.
Richmond Times-Dispatch, Feb. 10, 1972, at 6–B, col. 1.

2. The deprivations in maximum security are alleged to be:
 1. no exercise,
 2. only two meals a day of leftovers,

**582**

was alleged to be personal injury and possible death, I think he was given no real choice.

I would remand to the district court for an evidentiary hearing. See Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). What we do not know about this case is much more than what we do know. Why is it not possible to identify and separate the violence-prone? If this approach is impractical and Breeden must himself be segregated, why must he suffer the alleged deprivations? What are the reasons, compelling or otherwise, that justify denying him possession of his personal belongings, curtailing his visitors and even his food and sanitation? Could Breeden have been protected by transfer to another prison?

In short, why must he choose between a reasonably safe life more miserable than that of other well-behaved prisoners and the risk of serious physical injury and death? I do not believe the state may constitutionally put such a choice to a prisoner, but, instead, must assume its responsibility to provide a reasonably safe place of imprisonment. To abdicate control of prisons to the rule of terror of the inmate "bulls" is, to me, to allow cruel and unusual punishment in violation of the Eighth Amendment. On the other hand, to subject a well-behaved prisoner to deprivations imposed as punishment upon unruly prisoners seems to me arbitrary and capricious action in violation of the due process clause of the Fourteenth Amendment.[3]

An evidentiary hearing might show that involved here is "institutional treat-

3. only one shower and one shave a week in cold water,
 4. only one visitor a month, and
 5. no personal belongings.

3. Smith v. Swenson, 333 F.Supp. 1258 (W.D.Mo.1971), relied upon by the majority, should be read in conjunction with the companion case of the same name reported

ment of such character or consequences as to shock general conscience or to be intolerable in fundamental fairness," Lee v. Tahash, 352 F.2d 970, 972 (8th Cir. 1965), justifying judicial interference in the administration of this prison.

I would remand for an evidentiary hearing.

ORDER DENYING REHEARING

It is ordered, That rehearing en banc is denied because the prisoner's release on parole and the unavailability of equitable relief have made the case inappropriate for en banc consideration.

at 333 F.Supp. 1253. At page 1257 the court stated the rationale of decision in these words: "that he is currently charged . . . with the stabbing of another inmate warrants his continued confinement in maximum security. . . ."