Leslie H. JOYNER
v.
Warden Gerald H. McCLELLAN.
No. 73–276–B.

United States District Court,
D. Maryland.
June 18, 1975.

Leslie H. Joyner, pro se.

Francis B. Burch, Atty. Gen. of Md., Donald R. Stutman, Asst. Atty. Gen., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This civil rights suit against a prison warden is now before this court on the defendant's motion for summary judgment. From the pleadings and materials submitted to this court, it appears that there are no disputes of material facts and summary judgment in favor of the defendant is appropriate.

In 1973, Leslie Joyner was stabbed by fellow inmates of the Maryland Penitentiary. Immediately following the stabbing, he was rushed to University Hospital for treatment. After approximately one week in the hospital, he was returned to the penitentiary. Once back, he was interviewed by an assistant warden who, according to the plaintiff, determined from Joyner's statements and from statements of previously interviewed witnesses that the stabbing was committed by a group of prisoners called "The Family". Because the plaintiff refused to give evidence against his assailants and because the assailants posed a continuing danger to the plaintiff, the assistant warden ordered that Joyner be placed in segregation for his own safety. Subsequently, Joyner was told by the assistant warden that he could return to the prison population if he were willing to sign a form waiving liability for bodily injury. Joyner, obviously agreeing with the assistant warden's assessment of the dangers to him, refused to sign. Joyner then applied for a transfer to the Maryland House of Correction, a medium security prison, but the Classification Board denied the request. Thereafter, Joyner filed this suit against the Warden of the Maryland Penitentiary. No other defendants are named in this action.

Despite the commands of Rule 8(a)(3) of the Federal Rules of Civil Procedure, the plaintiff has nowhere clearly set forth the nature of the relief sought. Giving the complaint a liberal reading, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it appears that the basic tenor of the complaint is a demand for injunctive relief. Specifically, it appears that Joyner is requesting that the Warden be enjoined either to transfer him to another institution or to change the restrictions placed on those in protective confinement. Furthermore, there is some indication that Joyner seeks monetary relief, although in this respect the demand for relief is even less clear. Nevertheless, for purposes of the defendant's motion for summary judgment, this court will assume that both injunctive and monetary relief are being sought.

Shortly before the filing of this suit, Joyner applied to the Inmate Grievance Commission to obtain a transfer out of the Maryland Penitentiary. The Inmate Grievance Commission held a hearing in April 1973 and found Joyner's request for a transfer to be meritorious. Thereafter, upon order of the IGC, the Classification Team reconsidered its prior decision and ordered that Joyner be transferred. He was transferred to the Maryland House of Correction in June 1973.

In light of Joyner's transfer, it is clear that his request for injunctive relief is moot. *Scott v. Jones,* 492 F.2d 130 (5th Cir. 1974); *Rhodes v. Bureau*

of Prisons, 477 F.2d 347 (5th Cir. 1973); Russell v. Henderson, 475 F.2d 1138 (5th Cir. 1973); Breeden v. Jackson, 457 F.2d 578, 580 (4th Cir. 1972); Bryant v. Blackwell, 431 F.2d 1203 (5th Cir. 1970). It is well settled "that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' North Carolina v. Rice, 404 U.S. 244, 246 [92 S.Ct. 402, 404, 30 L.Ed.2d 413] (1971)." DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974).

A claim for damages, however, is not mooted by a transfer, Rhodes v. Bureau of Prisons, supra, and, thus, this court will now address the individual counts upon the assumption that the plaintiff requests damages from the defendant Warden.

■ In Counts 1, 2, 3, 7, and 8, Joyner complains about the restrictions to which he was subjected while he was in protective segregation. These have no merit. In Breeden v. Jackson, supra, the Fourth Circuit specifically held that similar restrictions upon persons placed in protective custody are not constitutionally impermissible. See Pinkston v. Bensinger, 359 F.Supp. 95 (N.D.Ill. 1973) (excellent review of solitary confinement cases); Smith v. Swenson, 333 F.Supp. 1253 and 1258 (W.D.Mo.1971) (permissible conditions of protective segregation); Bundy v. Cannon, 328 F. Supp. 165, 171 (D.Md.1971) (segregated confinement does not itself violate the Constitution); Krist v. Smith, 309 F. Supp. 497 (S.D.Ga.1970) (segregation is permissible means for protecting prisoner), aff'd, 439 F.2d 146 (5th Cir. 1971). In Breeden, the Court of Appeals wrote,

It may be that the prison authorities in this case could have arranged to provide the petitioner with less onerous conditions of confinement. Under the guise of protecting constitutional rights, however, federal courts do not have the power to, and

must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management.

457 F.2d at 580. And, it concluded

The deprivations of which the petitioner complains here do not assume constitutional dimensions; they are neither arbitrary nor capricious. Under petitioner's own claim, they are the usual and accepted regulations imposed in maximum security. They "neither amount to cruel and unusual punishment or denials of equal protection of the laws." They are manifestly within the discretionary authority of the prison administration. They involved none of the inhuman deprivations noted in Hancock v. Avery, supra [301 F.Supp. 786 (D.C.Tenn. 1969)]. These regulations are similar to those complained of in Ford v. Board of Managers of New Jersey State Prison (3d Cir. 1969) 407 F.2d 937, 940, where the Court said:

"Solitary confinement in and of itself does not violate Eighth Amendment prohibitions, and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief."

(Additional cites omitted) . . . "Viewing the complaint in the light most favorable to plaintiff in accordance with the rule of Conley v. Gibson, 355 U.S. 41, 45–46, [78 S.Ct. 99, 2 L.Ed.2d 80] it must be dismissed for failure to state a claim within federal jurisdiction."

Id. at 581.

In this case, the simple fact is that Joyner was exposed to a real danger of attack by any of a number of persons in

the prisoner population. Some of those persons were known but, evidently, not all of them. In the exercise of their duty to protect the prisoner, prison officials had little choice but to segregate Joyner, at least pending the outcome of transfer proceedings. Any group activities posed a substantial danger.[1] Certainly, the prison officials had no obligation to expose themselves to possible liability in damages by releasing the prisoner into the general population while both he and they believed there was a danger.

■ It is unfortunate that the victim, rather than the perpetrators, must be the one who bears the burden of segregation. But the Due Process Clause bars prison officials from segregating prisoners for infractions without some evidentiary basis. Mere suspicions will not do, and, here, Joyner·refused to give evidence against his attackers.

■ In Count 4, Joyner charges "[n]egligence against the Warden for damages to Plaintiff, that could have been avoided, & because of negligence I was stabbed almost to death." This count falls short of stating a claim for relief for two closely related reasons. First, as stated above, mere negligence is not a sufficient basis for an award of damages under § 1983. *See Penn v. Oliver*, 351 F.Supp. 1292, 1294 (E.D.Va. 1972). "Gross and culpable negligence" is necessary. *See Jenkins v. Averett*, 424 F.2d 1228, 1232–33 (4th Cir. 1970). Second, in cases involving attacks by other inmates, there must be more than a single attack on a prisoner. *Penn v. Oliver, supra. See Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973).

Yet, a single incident is all that has been alleged here. Nowhere has plaintiff claimed that he had previously requested protection, nor that prison officials had any particular reason to think that he was endangered. Once the threat was apparent, prison officials took reasonable steps to protect the plaintiff—Joyner was placed in protective segregation and ultimately he was transferred. Finally, there is the affidavit of Acting Warden McLindsey Hawkins, who states that in fact all normal guard procedures were in effect and being followed at the time of the attack and that "there was no advance warning or information which would have indicated that Leslie Joyner was in danger of an attack."

In Count 5, Joyner complains that certain goods were stolen from his "Sleeping Quarters" while he was in the hospital or in segregation. Once again, Joyner has alleged a single instance of negligence at most, and that is not sufficient.

Counts 6, 8, and 9 attack the failure of prison officials to transfer Joyner to another prison. Count 6 charges the Classification Board and the defendant Warden with discriminating against Joyner by denying his requested transfer, while granting transfers, at unspecified times, to unspecified prisoners, who allegedly had served less time on longer sentences. Count 8 alleges "negligence in failing to make any attempt to grant Plaintiff relief." And, Count 9 asserts that Joyner's "so-called Advisor & Counselor, Mr. Thomas Nooney has personally discriminated against me" by refusing to recommend a transfer.

---

1. In the expanded statement of his claims, Joyner conceded that even .attending religious services would be dangerous. He suggested, "They could grant my Rights in shipping me where the [religious] involvement wouldn't jeopardize my life." Joyner has nowhere suggested that his right to practice his religion was otherwise disturbed, and, where, as here, prison officials have

a good reason for curtailing a prisoner's participation in group religious services, there is no infringement on constitutional rights. *See* Sharp v. Sigler, 408 F.2d 966 (8th Cir. 1969); Cooper v. Pate, 382 F.2d 518 (7th Cir. 1967); Pinkston v. Bensinger, *supra*; Belk v. Mitchell, 294 F.Supp. 800 (W.D.N.C.1968).

Each of these claims is meritless. In the first place, after Joyner pursued his available state remedial procedures, he was, in fact, transferred. The transfer was effectuated with reasonable promptness, in accordance with procedures which afforded plaintiff due process of law. In the second place, each of these three "transfer" counts erroneously presumes that this court is going to review the merits of the initial decision by the Classification Team not to recommend a transfer. This court has no authority to impose its opinions on the merits of the transfer request. As indicated previously, "federal courts do not have the power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons." *Breeden v. Jackson, supra*, 457 F.2d at 580. Even if a challenge to the merits of an individual transfer decision can be reviewed by a federal court, the scope of that review must be narrowly circumscribed. A federal court has no greater authority to review the merits of a decision by the Classification Team, after a quasi-judicial hearing, than it does to review the sufficiency of evidence in a criminal proceeding. In this court's view, if such a challenge can be addressed, the issue must be whether the decision rests upon "any evidence at all." *See generally, Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Holloway v. Cox*, 437 F.2d 412, 413 (4th Cir. 1971). Here, given the fact that Joyner is in prison on a life-plus-35-years sentence for three rapes, two robberies with a deadly weapon, daytime housebreaking, one count of perverted practices, and one count of being a rogue and a vagabond, prison authorities had more than an ample basis for deciding, albeit temporari-ly, not to transfer Joyner from a maximum security institution to one of lesser security. The public also has a right to be protected.

Apart from those common defects in Counts 6, 8, and 9, each has its own unique impediments. Count 6 does not allege discrimination based upon constitutionally proscribed categories, such as race or national origin. At most, it alleges that standards are inconsistently applied and that some persons, who in Joyner's opinion were less "qualified" to move from a maximum security institution to a lower security institution, have been so transferred. The intangible factors to be considered in an individualized decision making process, such as the one in this case, are myriad, and they are incapable of computer-like delineation and application. Merely to allege inconsistencies, therefore, falls far short of stating a constitutional claim for discrimination. The claim of negligence in Count 8 is deficient because mere negligence is not a basis for recovery under § 1983.[2] *See Jenkins v. Averett, supra; Penn v. Oliver, supra*. Also, with regard to Count 8, it fails to mention any personal involvement by the prison warden, the complaint's only defendant. "[S]ome personal involvement by the defendant is required; the doctrine of *respondeat superior* does not apply." *Barrow v. Bounds*, 4th Cir., No. 74–1731, slip at 2–3 (July 1, 1974) (per curiam); *Adams v. Pate*, 445 F.2d 105, n. 2 at 107 (7th Cir. 1971). Finally, as to Count 9, the advisor-counselor Nooney is not a named defendant and his affidavit refuting the allegations as to discrimination stands uncontroverted.

For the foregoing reasons, it is this 18th day of June, 1975, ordered that the defendant's motion for summary judgment be, and is hereby, granted.

---

2. If the plaintiff were seeking damages from the Classification Team for its decision denying his requested transfer, it would also appear that the Classification Team's members would be "performing quasi-judicial functions and [would] therefore [be] immune from suits for damages under 42 U.S. C. § 1983." *Cf.* Brown v. Boxley, No. 75–1186 (4th Cir., April 2, 1975).