**Ex parte Charles Haskell WILSON, Petitioner, in re Petition of Charles Haskell Wilson for a Writ of Mandamus.**

**Civ. A. No. AC–1322.**

United States District Court
E. D. South Carolina,
Columbia Division.

Dec. 1, 1964.

Charles Haskell Wilson, pro se.

HEMPHILL, Chief Judge.

Petitioner, Charles Haskell Wilson, has petitioned the Chief Judge of the United States Court of Appeals for the Fourth Circuit for a writ of mandamus praying that the Director of the South Carolina Board of Corrections and the mail clerk at the State Penitentiary be directed by this Court to "deliver all mail, with proper postage prepaid, addressed to public office holders by petitioner to the Post Office in Columbia, South Carolina with reasonable haste." Petitioner's application, in forma pauperis, has been forwarded to this Court for consideration.

Petitioner alleges that he is a prisoner in the South Carolina State Penitentiary and that prison authorities have not permitted him to mail letters (or have not deposited his mail with the Post Office Department), which mail consisted of applications for a Writ of Habeas Corpus directed to a State Judge, Honorable John Grimball, Resident Judge, Fifth Judicial Circuit. Petitioner alleges that applications for a writ were not properly forwarded to postal authorities on April 25, 1964 and June 9, 1964.

Because of the seriousness of this charge, i. e., an allegation that a prisoner was kept from communicating with the courts, the Department of Justice was requested to investigate. The investigation (a copy of which is attached to this order) reveals that a "writ room" was established in the penitentiary in 1963, which room is furnished with a typewriter, paper, and certain reference material for use by the inmates. Prior to the establishment of this "writ room,"

it appears that several prisoners, acting as "jailhouse lawyers," were charging for service and advice, which, necessarily, was more often than not, faulty. To obviate the necessity of prisoners depending upon other inmates for advice, this room was established. The director subsequently promulgated the rule that no writs would be mailed which were not prepared in the room provided therefor. If the rule is complied with the writ will be mailed. There is no limitation whatever on the number of writs which an inmate can prepare. Indeed, reference to the files of the Clerk's Office of the Fourth Circuit Court of Appeals, and of this Court, reveals numerous petitions from this petitioner and others who are incarcerated in the South Carolina State Penitentiary.

The petition here presented calls for a determination of the reasonableness of the rules dealing with the mailing privileges and the "writ room." This Court is reluctant to pass upon rules established in a State prison as it is impractical and usually unwarranted. However, a petition alleging the stoppage of mail addressed to courts is entitled to some examination for "reasonableness."

As Judge Haynsworth pointed out in McCloskey v. State of Maryland, 337 F.2d 72, 74 (4th Cir. 1964):

"Imprisoned felons and inmates * * * cannot enjoy many of the liberties, the rights and the privileges of free men. They cannot go abroad or mount the housetops to speak. They are subjected to rigid physical limitations and to disciplinary controls which would find no shred of justification in any other context. Even the disciplinary powers of military authorities are not so absolute.

"Because prison officials must be responsible for the security of the prison and the safety of its population, they must have a wide discretion in promulgating rules to govern the prison population and in imposing disciplinary sanctions for their violation. If a tractable inmate is subjected to cruel and unusual punishment or if his exercise of a constitutional right is denied without semblance of justification arising out of the necessity to preserve order and discipline within the prison, he may have a right of judicial review. In the great mass of instances, however, the necessity for effective disciplinary controls is so impelling that judicial review of them is highly impractical and wholly unwarranted. The remedy of the inmate is through administrative review, which ought to be available always.

"While an inmate of such an institution should be allowed a reasonable and proper correspondence with members of his immediate family and, at times, with others, it is subject to censorship to be certain of its reasonableness and propriety. A broader correspondence is subject to substantial limitations or to absolute prohibitions. Control of the mail to and from inmates is an essential adjunct of prison administration and the maintenance of order within the prison."

As the rules are set up, petitioner's access to this Court or any court is not being interfered with. The only condition precedent to such correspondence with the Courts is that it must be prepared in the "writ room." Surely this "restriction" is not unreasonable; indeed, it is probably more of a blessing than a curse. Petitioner's access to the courts are certainly not blocked or effectively hampered by the requirement that his correspondence to the courts be prepared in a room set up for that purpose.

It is ordered that leave to file the petition of Charles Haskell Wilson without the prepayment of costs or fees or the giving of security therefor is granted, and the petition is denied and dismissed because it appears that petitioner is not entitled to the relief for which prayer is made.

And it is so ordered.