**James C. SHIVELY, Petitioner,**

**v.**

**Charles E. WHITE, Superintendent, Field Unit #1, Dublin, Virginia, Respondent.**

**Civ. A. No. 72-C-119-R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Nov. 13, 1972.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief District Judge.

This case is before the court upon a petition for a writ of habeas corpus filed *in forma pauperis* by James C. Shively, a state prisoner, pursuant to 28 U.S.C.A. § 2241. Petitioner originally filed a "motion of complaint" in the United States District Court for the Eastern District of Virginia and by an order dated September 12, 1972 was transferred to this court. The petition for a writ of habeas corpus substantially reiterates the same charges mentioned in the "motion of complaint," and the court will consider the petition as a motion for injunctive relief pursuant to 42 U.S.C.A. § 1983.

Petitioner basically alleges that he was discriminated against in his attempts to be enrolled in the college program for inmates, and specifically cites March 23, 1972, when he was refused admittance to the night class college program at Field Unit I, Pulaski, Virginia, on the grounds of 1) conduct and 2) inability to adjust to Field Unit I.

Respondent filed a motion for summary judgment on October 11, 1972, and

denies any type of racial discrimination and cites petitioner's poor attitude, lack of interest, failure to attend classes and overall poor adjustment as reasons for his failure to be enrolled in further classes in the educational program. Affidavits of the respondent, Charles E. White; the Director of Education for the Bureau of Correctional Units, Daniel T. Mahon; and the Superintendent of the Bureau of Correctional Units, James F. Howard are presented as evidence in support of respondent's motion.

In his petition, petitioner states in support of his claim of discrimination that he has not been disobedient and has performed all the duties asked of him. He also claims to have all the necessary requirements for attendance of the college program at Field Unit I. Petitioner mentions another state prisoner, Dennis McAfee, who was attending New River College on a daily basis and was found "under the influence of drugs or intoxicants" when picked up at the college, and sentenced to 15 days confinement, but was still allowed to attend the night college program at Field Unit I. Petitioner alleges discrimination since he has no record and was denied enrollment.

Petitioner also mentions Freddie A. Click, a state prisoner, who was admitted to the college program at New River Community College in spite of the fact that he was sentenced to ten days confinement for possession of a weapon, "a knife," while in prison. Petitioner alleges discrimination since he has no record and was refused admittance to the college program.

Charles E. White, Superintendent of Pulaski Correctional Unit (No. 1) testifies in a sworn affidavit that when petitioner Shively was received in his unit on January 5, 1972, he was promptly enrolled in several night school courses— Math 46 and English 27. However, the records of the instructor, Miss Edith M. Ruben, indicate that he never attended class and then withdrew after approximately three weeks. Superintendent White states that Shively was not allowed to enroll in subsequent courses because of the lack of interest displayed after he was enrolled. He was advised that this decision was based not only on the fact that he was dropped from the class roll, but was due also to adjustment problems.

Superintendent White also states that Shively does not want to adjust and develop a good record. He cites as evidence the statements of Highway Foreman J. B. Hawkins, Officers R. J. Higgins, C. D. Clark and Foreman L. Branscome, along with that of fellow worker R. D. Finn, which indicate that his work on the road gang is very poor, he causes disturbances and confusion among other inmates and constantly tries to avoid work. An occasion is mentioned where Shively claimed he was bitten by a snake and was sent to a doctor, where later investigation revealed that he had taken a pair of finger nail clippers and had broken the skin to make the scratches appear to be a snake bite.

Superintendent White further states that petitioner's charges of discrimination are completely false and that his record is such that it does not warrant a recommendation that he be allowed to participate in the college program. He says petitioner has never been cooperative, constantly complains and displays a negative attitude.

Concerning inmate Freddie Click, Superintendent White stated that Click possessed a weapon and was allegedly using it for protection from another inmate who had threatened him. The Adjustment Committee, on February 23, 1972, heard the complaint, found Click guilty and gave him ten days in confinement. Superintendent White stated that authorities had reason to believe Click had acted out of fear for his own safety, he was a trusty road laborer and had made a satisfactory institutional adjustment. Click was attending night classes at the unit twice a week at the time of the offense, and he was released on parole on April 24, 1972.

Dennis M. McAfee, another inmate, was attending classes at New River Community College and had made a good adjustment at Unit No. I. He had been granted parole when he became involved in an incident with jimsonweed. He was found guilty on March 1, 1972 of being under the influence of drugs by the Adjustment Committee and received a sentence of fifteen days in isolation. He was removed from the campus program and his parole was postponed for ninety days as a result of this offense. He was allowed to continue his night classes.

Superintendent White disputes petitioner's allegation that he has never been charged with an offense while at Unit No. I. A report of the Adjustment Committee, dated April 18, 1972, shows that petitioner, on April 12, 1972, was charged with refusing to obey a direct order to go back to work. He was found guilty and given fifteen days in confinement, and thirty days loss of good time, which was later suspended by James F. Howard, Superintendent of the Bureau of Correctional Units, as part of his policy toward first offenders.

Superintendent White further avers that when a case comes before the Adjustment Committee, no consideration is given to an offender's race, creed or color. Each case is judged on its own merits and the only factors considered in disciplining an offender are the nature of the offense, the prisoner's prior record, his adjustment to prison and his attitude before the Committee.

In the cases of F. Brown and Carlisle E. Colemen, cited in petitioner's motion, Superintendent White indicated that the Adjustment Committee tried each case on the merits, and the sentence imposed was based on the attitude of the defendant and his past record.

James F. Howard, Superintendent of the Bureau of Correctional Units, states in his affidavit that he granted Shively the suspension of loss of thirty days good time after being found guilty by the Adjustment Committee as part of his policy of granting suspensions on loss of good time to first offenders.

Daniel T. Mahon, Director of Education for the Bureau of Correctional Units, states in his affidavit that he waived the requirements of enrollment for petitioner Shively, a recent arrival at the unit, in the college program during the winter semester of 1972. The requirements considered as criterion are: six months good record at a unit, sufficient IQ and eighteen months or less until parole eligibility date. Director Mahon stated that a good record for six months is required to assure that the applicant has made a good adjustment. It was noted that petitioner has been transferred eight times between November 12, 1971 and the present. According to Director Mahon, "this indicates an unstable personality and an inability to adjust." He further says that if he was considering petitioner's application now, he would state that petitioner is unqualified and would deny the request. The director continued by saying that "Our program is for an elite group, only about 1% of the inmates in our penal system are accepted for the program and it would be unfair to other deserving inmates to allow this questionable case to go ahead of them."

Director Mahon states that petitioner was enrolled in the night school program once, and withdrew voluntarily for medical reasons. However, the penitentiary hospital records indicate that he was transferred there from February 2–February 25, 1972 for consultation, swelling of the knee, eye examination and headaches. His medical classification was found to be Class "A", meaning "general approval for any work."

Director Mahon further mentions inmate McAfee who was guilty of violations while a student. After a meeting with Superintendent White, McAfee was allowed to continue in the night school program at the unit as a compromise solution.

■ This court finds that the affidavits of C. E. White, Daniel T. Mahon

and James F. Howard, qualified professionals in prison administration and correctional education, certainly indicate that petitioner was not discriminated against when he was refused admittance to the college program on grounds of conduct and inability to adjust. Petitioner was enrolled in an education program once, but refused to attend. The evidence of transferral eight times within twelve months indicates an "unstable personality and inability to adjust," according to Director Mahon. Statements by Shively's foremen Branscome and Hawkins, Officers Higgins and Clark, and a fellow worker, R. D. Finn, indicate that Shively's work on the road gang was very poor.

A letter from W. K. Cunningham, Director of the Division of Corrections of the Virginia Department of Welfare and Institutions to petitioner, dated August 25, 1972, states:

> I am sure that you will agree it is quite impossible for anybody to carry out or participate in an educational program while transferring through so many locations. I also note in your file several letters from Mr. C. H. Davis in which he urges you to settle down and apply yourself and to make the best of your position. I think that it would be in your best interests if you would stop and reevaluate your present situation. We have programs of an educational nature made available to inmates. We encourage you to participate in these programs but at the same time a great deal of responsibility lies upon yourself as a participant in order to derive any benefit from them. Thus far it appears that you are more anxious to complain about treatment received than to apply yourself. You will never receive any benefit from these programs unless you apply yourself and I urge you to reconsider . . .

The court finds good advice contained in this letter. The petitioner has not demonstrated to prison officials or to this court that he is deserving of the privilege of participating in the college program, which is not a constitutional right, and is limited to only 1% of prison inmates. By his conduct, petitioner has raised doubts about his stability and adjustment and until he applies himself appropriately to overcome those doubts, he will never gain access to the college program. The court therefore finds petitioner's claim that he has been discriminated against to be without merit and accordingly dismisses it.

■ Petitioner, in other charges, states that Superintendent White "is trying to place his personal record in a negative light, leading concerned peoples (Va. Parole Board) to view him in other than positive attitudes." Superintendent White denies that he is attempting to place petitioner's record in a negative light in his affidavit. He further states that the Virginia Parole Board is an independent body, and reaches decisions after reviewing the candidate's record and in reviewing him. The petitioner must accept responsibility for the record which he compiles. The court finds petitioner's charge against Superintendent White to be frivolous and without merit and therefore dismisses it.

■ Petitioner charges that he sustained a pay reduction from 35 cents to 25 cents per day. However, Superintendent White states that petitioner is paid 25 cents per day plus a bonus of 10 cents per day. Petitioner's poor work record has prevented receipt of the bonus. The court does not find a denial of prisoner's rights and accordingly dismisses the charge.

■ Petitioner also contends that since arriving at Field Unit No. I, he has turned over to the proper authorities two weapons—a gun and a butcher's steel, and therefore he deserves a reduction in sentence for this service. However, Superintendent White states in his affidavit, "While this is a commendable action it was not felt that the items were of such a significant nature as to justify a reduction in sentence." He further states that "it is not the policy of the Division of Corrections to

award a reduction in time whenever any item is turned in but it is the policy to make note of this commendable act in the individual's record, which has been done." This court finds no constitutional rights abridged by this policy and accordingly finds petitioner's claim to be without merit.

Petitioner also claims that he "was denied transfer to Unit #8, Harrisonburg, Virginia, in order to attend the college program there." He mentions action by the Institutional Classification Committee to reclassify him to a higher degree of custody status. Superintendent White states that this reclassification is not an attempt to restrain his progress or mar his record, but that "the reason for this recommendation was the numerous transfers and incessant medical requirements of petitioner."

 Superintendent White further says that he felt petitioner's needs could be better served by transfer to an institution with medical facilities, since he had been given medical attention on fifty-five different occasions since his arrival at Unit No. I. The court does not find denial of transfer or reclassification unreasonable in light of petitioner's past medical history and numerous transfers. It therefore dismisses the claim as being without merit.

 Petitioner further states that "on 18 July, 1972, complainant was transferred from Field Unit #I to the penitentiary for medical reasons. During this period no mail was received for 21 days." In Sostre v. McGinnis, 442 F.2d 178 at 199 (2d Cir. 1971), the court said:

> The traditional and common practice of prisons in imposing many kinds of controls on the correspondence of inmates, lacks support in any rational and constitutionally acceptable . . . McCloskey v. Maryland, 337 F.2d 72, 74–75 (4th Cir. 1964) ('Control of the mail to and from inmates is an essential adjunct of prison administration').

This court does not find that holding mail for petitioner during his sickness to be unreasonable or arbitrary. It therefore dismisses petitioner's claim as being without merit.

The court, for the reasons stated, finds no good reason to grant petitioner's motion for injunctive relief pursuant to 42 U.S.C.A. § 1983. Accordingly, the court dismisses petitioner's complaint and grants summary judgment to the defendant.