David James HUNDLEY and William
L. Bauer, Jr., Plaintiffs,

v.

Allyn R. SIELAFF, Director of Department of Corrections, State of Illinois, and David Brierton, Warden, Stateville Correctional Center, Defendants.

No. 75 C 1386.

United States District Court,
N. D. Illinois, E. D.

Dec. 9, 1975.

William L. Bauer, Jr., pro se.

David James Hundley, pro se.

Joseph F. Bartley, III, Peoria, Ill., for plaintiffs.

William J. Scott, Atty. Gen., Melbourne A. Noel, Jr., and Anne Taylor, Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

On May 1, 1975, the plaintiff, David James Hundley and William L. Bauer, Jr., filed a *pro se* civil rights action against the defendants, Allyn Sielaff, Director of the Illinois Department of Corrections, and David Brierton, the Warden at Stateville Penitentiary. 42 U.S.C. § 1983; 28 U.S.C. § 1343(3) (1970). The defendants have moved to dismiss the complaint, and that motion is ready for decision.[1]

At the time the plaintiffs filed their complaint, they were both incarcerated at the Stateville Correctional Center located in Joliet, Illinois. Subsequently, plaintiff Hundley was transferred to the Menard Correctional Center. Bauer, however, is still incarcerated at Stateville.[2]

The complaint, which is lucid for a *pro se* prisoner action, alleges that both Hundley and Bauer were confined to the safekeeping unit at Stateville on February 21 and March 20, 1975 respectively. Their transfer from the general population was apparently made at the plaintiffs' request because they were afraid of physical harm if they remained assigned to the general prison population. The consequences of this transfer form the basis of their complaint.

According to the plaintiffs, the safekeeping unit at Stateville is located in the same building as the segregation unit; consequently, movement is restricted. Inmates are confined to their cells except when let out to see visitors or communicate with prison officials, and there is alleged to be no access to rehabilitational and recreational programs and religious services.

Understandably dissatisfied with the conditions in the safekeeping unit, the plaintiffs requested transfers to a different correctional facility so they could take advantage of the new institution's

1. The plaintiffs filed a motion for appointment of counsel, specifically requesting that attorney Joseph F. Bartley III of Peoria, Illinois be appointed to represent them. Mr. Bartley was contacted and informed of the request, and he agreed to it. Absent the specific request and Mr. Bartley's willingness to undertake the representation of the plaintiffs, counsel would not have been appointed. *Chapman v. Kleindienst*, 507 F.2d 1246, 1250 n. 6 (7th Cir. 1974). Since his appointment Mr. Bartley has never contacted the court or responded to motions sent to his office. A final notice of the defendant's motion to dismiss was sent on October 23, 1975 to Mr. Bartley and the plaintiffs. No response was received.

2. Mr. Bauer was served with a notice and copy of the motion both at Stateville and at a county jail where he was being held on another matter.

rehabilitation programs, thereby increasing their chances for parole. Shortly after the complaint was filed, Hundley was transferred to Menard, apparently as a direct result of his requests. Bauer, on the other hand, is still in safekeeping at Stateville.

The plaintiffs assert four "Legal Claims" in their complaint, three of which stem from their being placed in the safekeeping unit. The fourth claim is raised solely by Hundley and stems from the prison administration's failure to mail a letter to one Rollie Elsner, a prisoner at Menard. After considering the facts alleged in the complaint in the liberal manner required by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the conclusion reached is that the defendants' motion to dismiss should be granted.

■ The plaintiffs first complain that they were denied religious sacrament in violation of the first amendment. More specifically, they allege that they "are members of the Church of the New Song, true and just members of the Eclatarian faith and that as they are now confined within Stateville Correctional Center where there are no Eclatarian services offered, they are being subjected to undue strain." (Complaint ¶ 14.) Assuming the truth of these allegations, the complaint does not state a cause of action under Section 1983 for at least two reasons. First, the "Church of the New Song of the Eclatarian Faith" is not a religion for first amendment purposes. This conclusion has been reached on at least two occasions by federal courts after full evidentiary hearings. *Theriault v. Silber*, 391 F.Supp. 578 (W.D.Tex.1975); *Theriault v. Establishment of Religion on Taxpayers Money*, No. CV 70–186D (E.D.Ill. April 4, 1975). At the conclusion of the hearing held in the Eastern District, Judge Wise held that the alleged religion was nothing

more than a scheme devised to obtain special privileges and benefits for members of the church which were not available to other inmates.

■ Even assuming, however, that the Church of the New Song is a constitutionally protected religion, there is no constitutional requirement that the state provide the plaintiffs with "Eclatarian" services. In *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam), the court, in considering the claims of a Buddhist prisoner who claimed he was punished for practicing his religion, stated that not

"every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." 405 U.S. at 322 n. 2, 92 S.Ct. at 1081.

Mr. Chief Justice Burger, concurring, stated further that,

"[T]here cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, Buddhist materials cannot be denied to prisoners if someone offers to supply them." 405 U.S. at 323, 92 S.Ct. at 1082.

■ In the instant case the plaintiffs allege nothing more than that the prison administration does not provide Eclatarian services.[3] There is no allegation that there is a reasonable demand for these services or that the plaintiffs are in any way discriminated against because of their alleged beliefs. Under these circumstances, the defendants' motion to

---

**3.** Illinois provides that ministers and clergy shall have free access to the prisons consistent only with the security demands of the institution. *Ill.Rev.Stat.* ch. 38, § 1003–7–2(e) & (f) (1973).

dismiss this claim is granted. *See Gittlemacker v. Prasse*, 428 F.2d 1 (3d Cir. 1970); *Cooper v. Pate*, 382 F.2d 518 (7th Cir. 1967).

 The plaintiffs' second claim is that the defendants' failure to provide them with recreational periods each day constitutes cruel and unusual punishment in violation of the eighth amendment. To establish a claim of cruel and unusual punishment, the complainant must allege conditions which are so foul, so inhuman, and so violative of basic concepts of decency that they fall within the proscriptions of the eighth amendment. *Thomas v. Pate*, 493 F.2d 151, 159 (7th Cir.) *judgment vacated on other grounds*, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). *See Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir. 1975); *United States ex rel. Miller v. Twomey*, 479 F.2d 701 (7th Cir.), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1973). The plaintiffs' singular allegation that they are denied recreation periods while confined to safekeeping does not state a claim for relief under Section 1983 for imposition of cruel and unusual punishment. *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972); *Smith v. Swenson*, 333 F.Supp. 1253 (W.D.Mo. 1971); *see Thomas v. Pate, supra; Aikens v. Lash*, 371 F.Supp. 482 (N.D.Ind. 1974), *modified*, 514 F.2d 55 (7th Cir. 1975). Therefore, the defendants' motion to dismiss this claim is granted.

The third and final claim asserted on behalf of both plaintiffs is that the defendants have refused or been indifferent to their requests for transfers to another correctional institution where they could take advantage of rehabilitational programs and thus enhance their chances for parole, all in violation of rights guaranteed by the first, fourth, and eighth amendments. The defendants contend that Hundley's claim is moot because he was transferred to Menard pursuant to his request. Bauer, however, was not transferred, and they argue his claim should be dismissed because he has no constitutional right to be transferred to another institution.

█ Attached to the plaintiffs' complaint are letters to prison officials which, to some degree, explain the background of the plaintiffs' requests for transfers. As previously stated, Hundley was placed in the safekeeping unit on February 20, 1975. Perhaps as early as March 5, 1975, but not later than March 24, he requested a transfer. Apparently this request was processed through normal administrative channels and was granted, the actual transfer occurring on May 20, 1975.[4] On these facts the conclusion reached is that the claim should be dismissed not because of mootness, but because it is frivolous.[5]

Bauer presents a more difficult problem. He was placed in safekeeping on March 20, 1975. Sometime shortly thereafter he requested a transfer to Menard, and a hearing on the request was scheduled for April 1, 1975. What, if anything, happened at the hearing is not disclosed by the papers. The court assumes, however, that the plaintiff is still located in the safekeeping unit.

 The defendants argue that the complaint should be dismissed because Bauer has no constitutional right to a transfer, and that the question of whether an inmate should be transferred from one institution to another is a decision vested in the discretion of the Department of Corrections. There undoubtedly was a time when federal courts would

---

4. *Ill.Rev.Stat.* ch. 38, § 1003–8–4 (1973), provides that after an initial assignment to an institution, a transfer to another institution must be approved by a person designated by the Director of the Department of Corrections. According to the Commentary following this section, the Director has a duty to establish uniform regulations for transferring prisoners.

If these regulations do exist, they were not submitted by the defendants.

5. Hundley requested both declaratory relief and damages; therefore, the actual transfer would moot the claims. A contrary result would follow if he had failed to request damages.

not interfere with prison transfer decisions unless some clear abuse or caprice on the part of the prison officials could be shown. *See, e. g., United States ex rel. Verde v. Case*, 326 F.Supp. 701, 704 (E.D.Pa.1971). More recent cases, however, hold that transfers that result in a grievous loss to the prisoner cannot be accomplished without the safeguards of minimal due process. *Aikens v. Lash, supra*; *United States ex rel. Haymes v. Montanye*, 505 F.2d 977 (2d Cir. 1974), *cert. gr.* 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975); *Newkirk v. Butler*, 499 F.2d 1214 (2d Cir. 1974), *vacated and remanded on other grounds sub nom., Newkirk v. Prieser*, 419 U.S. 894, 95 S.Ct. 172, 42 L.Ed.2d 138 (1975); *Stone v. Egeler*, 506 F.2d 287 (6th Cir. 1974). And while most of these cases deal with disciplinary rather than administrative transfers, the label a state places on the transfer is not determinative. The court must look to the loss suffered by the transferred prisoner. *Newkirk v. Butler, supra*, at 1217, 95 S.Ct. 172. Not every loss, however, is sufficient to invoke the due process clause. When the transfer is motivated by factors extrinsic to an inmate's behavior, the move may be accomplished without procedural due process even though some hardship may result to the prisoner. *United States ex rel. Haymes v. Montanye, supra*, at 980. *See Hillen v. Director of Social Services*, 455 F.2d 510, 511 (9th Cir.), *cert. denied*, 409 U.S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (1972).

The present case differs significantly from the previously referred to transfer cases. In those cases the prisoner was transferred involuntarily, and the issue was whether some form of minimal due process was required prior to the transfer. Here the plaintiff asserts a constitutional claim based upon an alleged denial of a requested transfer. His claim is that it is a violation of the eighth amendment to confine him in a safekeeping unit for protective reasons when the state could transfer him to an institution where he could engage in the normal activities available to other prisoners.[6] *See generally* Note, "A Prisoner's Right to a Protective Transfer from State to Federal Prison," 50 *Ind.L.J.* 143, 149 (1974).[7]

In *Breedon v. Jackson*, 457 F.2d 578 (4th Cir. 1972), the Court of Appeals for the Fourth Circuit considered an analogous case. A state prisoner was transferred from the general population to maximum security at his own request because he feared bodily harm if forced to remain with the general population. He then filed a Section 1983 action alleging that conditions imposed upon him in maximum security constituted cruel and unusual punishment. The court dismissed the complaint holding:

It may be that the prison authorities in this case could have arranged to provide the petitioner with less onerous conditions of confinement. Under the guise of protecting constitutional rights, however, federal courts do not have power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. . . .

.　　.　　.　　.　　.

The deprivations of which the petitioner complains here do not assume constitutional dimensions; they are neither arbitrary nor capricious. Under petitioner's own claim, they are the usual and accepted regulations imposed in maximum security. They "neither amount to cruel and unusual punishment or denials of equal protection of the laws." They are manifestly within the discretionary authority of the prison administration. 457 F.2d at 580–81 (footnote omitted).

---

**6.** The plaintiff also alleges that the failure to grant a transfer denies him his rights under the first and fourth amendments. These allegations are obviously frivolous.

**7.** No claim is made that procedures for requesting a transfer are violative of due process.

Judge Craven strongly dissented arguing that the state, consistent with the due process clause and the eight amendment, put a well behaved prisoner to the choice of physical injury or death if he remained in the general population or the deprivation of maximum security. He would have remanded the case to the district court for a hearing to determine whether some less restrictive means, including the possibility of a transfer to another institution, was available as an alternative to the rigors of maximum security. 457 F.2d at 582.

 While the views of Judge Craven are persuasive from a humanitarian standpoint, the court is persuaded that as a matter of constitutional law, the majority view is correct. Bauer was placed in safekeeping at his own request, and the conditions there do not, as alleged, constitute cruel and unusual punishment. Illinois has a procedural framework for processing requests for transfers. Mr. Bauer has apparently availed himself of that system and he does not allege that his request was denied for arbitrary or capricious reasons. The determination of whether a prisoner's request for a transfer should be granted is a matter that is best left to the reasoned discretion and good faith of the prison officials. *See Mueller v. Turcott,* 501 F.2d 1016, 1019 (7th Cir. 1974); *United States v. Montanye, supra,* at 980 & n. 4; *Siebert v. McCracken,* 387 F.Supp. 275, 278 (E.D.Okl.1974). Therefore, the defendants' motion to dismiss Bauer's claim for an administrative transfer is granted.

The only remaining claim is Hundley's allegation that in one instance a letter he mailed to his alleged brother, Rollie Elsner, an inmate at Menard, was returned to him with a notation that Elsner was not on his approved mailing list. Hundley does not allege that the mail regulations at Stateville are unconstitutional[8] or that the prison administration has otherwise interfered with his correspondence. In fact, he alleges that Elsner is on his approved mailing list. The court concludes that since the plaintiff alleges only a single instance in which a supervisor perhaps improperly refused to mail a letter, no claim for relief is stated under Section 1983, *Woods v. Yeager,* 463 F.2d 223, 224 (2d Cir. 1972) (per curiam); *Morgan v. Montanye,* 516 F.2d 1367 (2d Cir. 1975), and the defendants' motion to dismiss the claim is granted.

In conclusion the plaintiffs' complaint purports to raise four claims under 42 U.S.C. § 1983. For the reasons previously stated, the claims are not sufficient to entitle plaintiffs to relief, and, therefore, the defendants' motion to dismiss the complaint is granted.

---

8. The mail regulations in effect at Illinois correctional facilities were recently upheld in

*Bach v. Coughlin,* 508 F.2d 303, 307–308 (7th Cir. 1974).