(No. 82-CC-1617– )

LUCAS GONZALES, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed August 12, 1982.*

LUCAS GONZALES, *pro se*, for Claimant.

TYRONE C. FAHNER, Attorney General (GLEN LARNER,
Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

This is an action brought by Claimant, Lucas Gon-
zales, a resident of Stateville Correctional Center, for
$15,000.00 damages "for being wrongfully and illegally
transferred in violation of his constitutional rights" from a
medium security institution (Graham Correctional Cen-
ter) to a maximum security institution (Stateville Correc-
tional Center).

The department report filed herein sets out by way
of hearsay that Claimant was an organizer of drug traf-
ficking activities at Graham, that he engaged in this activ-
ity with his stepfather, Richard Jones, also an inmate, and
that the drugs were supplied, in part at least, by one
Carmen Navarett, wife of Jones and mother of Claimant.

Claimant was sentenced to Stateville in 1979. He was
transferred to Graham on December 2, 1980. (R. 8) On
April 11, 1981, his mother was arrested at the entrance to
Graham Correctional Center. (Subsequently she pleaded
guilty in the Montgomery County Circuit Court to un-
lawful possession of cannabis, paid a $500.00 fine and
was given a two-year conditional discharge.) On April 17,

1981, the authorities at Graham submitted an administrative transfer request to the director of the Department of Corrections for Claimant's transfer. This request was approved, and on April 28, 1981, Claimant was returned to Stateville.

A memorandum dated February 19, 1982, from Kenneth L. McGinnis, warden, Graham Correctional Center, to Ronald S. Vycital, manager support services, contains the following statement:

"Mr. Gonzalez [sic] was transferred from the Graham Correctional Center to the Stateville Correctional Center pursuant to the provisions of Administrative Regulation 817, section II-F, which permits non-disciplinary transfers without prior hearings when it is in the best interest of the inmate or the Department of Corrections."

The Department of Corrections adult division administrative regulations dealing with institutional transfers are attached hereto as an exhibit. Section II-F specifically provides as follows:

"F. Nothing in this regulation should be construed to mean that a non-disciplinary transfer may not be made without a hearing when it is in the best interest of a resident or the Department of Corrections."

In *Hundley v. Sielaff* (1975), 407 F Supp. 543, 546, (a civil rights action brought by two residents of Stateville against the director of the Department of Corrections and the Stateville warden), Justice Marshall states:

"The defendants argue that the complaint should be dismissed because Bauer has no constitutional right to a transfer, and that the question of whether an inmate should be transferred from one institution to another is a decision vested in the discretion of the Department of Corrections. There undoubtedly was a time when federal courts would not interfere with prison transfer decisions unless some clear abuse or caprice on the part of the prison officials could be shown. See, e.g., *United States ex rel. Verde v. Case*, 326 F.Supp. 701, 704 (E.D.Pa.1971). More recent cases, however, hold that transfers that result in a grievous loss to the prisoner cannot be accomplished without the safeguards of minimal due process. *Aikens v. Lash*, supra; *United States ex rel. Haymes v. Montanye*, 505 F2d 977 (wd Cir. 1974), cert. gr. 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975); *Newkirk v. Butler*, 499 F.2d 1214 (2d Cir. 1974), vacated and remanded on other grounds sub nom., *Newkirk v. Prieser*, 419 U.S. 894, 95 S.Ct. 172, 42 L.Ed.2d 138 (1975); *Stone v. Egeler*, 506 F.2d 287 (6th Cir. 1974). And while most of these cases deal with disciplinary rather

than administrative transfer, the label a state places on the transfer is not determinative. The court must look to the loss suffered by the transferred prisoner. *Newkirk v. Butler*, supra, at 1217, 95 S.Ct. 172. Not every loss, however, is sufficient to invoke the due process clause. When the transfer is motivated by factors extrinsic to an inmate's behavior, the move may be accomplished without procedural due process even though some hardship may result to the prisoner. *United States ex rel. Haymes v. Montanye*, supra at 980. See *Hillen v. Director of Social Services*, 455 F.2d 510, 511 (9th Cir.), cert. denied, 409 U.S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (1972)."

While it thus appears that the claims of inmates of Illinois correctional centers concerning their rights with regard to institutional transfers can be heard in the Federal courts, there is a question as to whether this Court can hear such claims. Clearly this Court could not direct that a claimant be transferred from one institution to another.

However, in this case Claimant is not asking for such affirmative relief. He is asking instead for $15,000.00 damages, alleging that his transfer was cruel and unusual punishment.

For Claimant to recover it would first be necessary for him to prove that in transferring him from Graham Correctional Center to Stateville Correctional Center the State committed an actionable tort, and secondly it would be necessary for him to prove the amount of his damages.

Even if Claimant were completely innocent of the drug-pushing activities alleged against him, there is nothing in the record to indicate that Respondent exceeded its administrative discretion in ordering his transfer. Section II-F of the Department's administrative regulations specifically provides that a non-disciplinary transfer may be made without a hearing when it is in the best interest of a resident or the Department of Corrections. Claimant was transferred without a hearing, but there is nothing in the record to show that the Department abused its discretion in so transferring Claimant. There is nothing in

the record to show that Claimant's transfer was other than a non-disciplinary transfer.

Finally Claimant has not succeeded in proving his damages. On page 28 of the record he expressly states that in asking for $15,000.00 damages he was including what he felt were damages suffered by his mother.

On page 33 of the record Claimant spelled out that the relief he really wants is to be transferred to the farm at Stateville:

"I want to be transferred. I don't even want the money if I can get transferred. All I want to do is go the farm . . . ."

This relief is beyond the power of the Court of Claims.

It is hereby ordered that the claim be, and hereby is, denied.